Filed 5/31/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CENTER FOR LOCAL GOVERNMENT ACCOUNTABILITY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN DIEGO et al., <br><br> Defendants and Respondents. | D068432 <br><br><br> (Super. Ct. No. 37-2014-00030567-CU-JR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Gregory W. Pollack, Judge.  Reversed and remanded with directions.


Law Office of Craig A. Sherman and Craig A. Sherman for Plaintiff and

Appellant.

Jan I. Goldsmith, City Attorney, and Walter C. Chung, Deputy City Attorney for

Defendants and Respondents.

INTRODUCTION

The Ralph M. Brown Act (Brown Act) (Gov. Code, § 54950 et seq.),[1] governs the conduct of local legislative bodies and imposes upon them various obligations, including giving prior notice of meetings and making the meetings open to the public. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 520, fn. 5.) To these ends, section 54954.3, subdivision (a), of the Brown Act requires the agenda of every regular meeting of a local legislative body to include an opportunity for members of the public to address the legislative body on matters within its purview, but not otherwise on its agenda for action.[2] For purposes of this appeal, we refer to this opportunity as a nonagenda public comment period.

As one mechanism for ensuring compliance with the Brown Act, section 54960, subdivision (a), authorizes an interested person to commence a lawsuit by mandamus, injunction or declaratory relief to determine the applicability of the Brown Act "to ongoing actions or threatened future actions of the legislative body, or to determine the applicability of [the Brown Act] to past actions of the legislative body, *subject to Section 54960.2*." (Italics added.) Section 54960.2 establishes several preconditions to filing a

---

[1]    Further statutory references are also to the Government Code unless otherwise stated.

[2]    Section 54954.3 provides: "Every agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body, provided that no action shall be taken on any item not appearing on the agenda unless the action is otherwise authorized by subdivision (b) of Section 54954.2."

lawsuit under section 54960, subdivision (a), including submission of a cease and desist letter to the offending legislative body. (§ 54960.2, subd. (a)(1).)

The City of San Diego and its city council (City) are subject to the Brown Act, including section 54954.3. (§§ 54951, 54952, subd. (a).) The Center for Local Government Accountability (Center) filed this litigation to determine whether the City's adherence to a long-standing ordinance providing for only one nonagenda public comment period over the course of its two-day regular weekly meetings violated section 54954.3. The trial court dismissed the Center's complaint after sustaining the City's demurrer to it without leave to amend. The Center appeals.

To resolve the Center's appeal, we must decide three questions. First, we must decide whether the qualifying phrase "subject to Section 54960.2" in section 54960, subdivision (a), applies only to litigation to determine the Brown Act's applicability to past actions or also to litigation to determine the Brown Act's applicability to ongoing or threatened future actions. We must further decide whether the City's continued adherence to a long-standing ordinance providing for one nonagenda public comment period over the course of its two-day regular weekly meetings constitutes a past action or an ongoing or threatened future action. Finally, we must decide whether the City's postlitigation adoption of an ordinance providing for a nonagenda public comment period on each day of its two-day regular weekly meetings moots this litigation.

We conclude the qualifying phrase "subject to Section 54960.2" in section 54960, subdivision (a), applies only to litigation to determine the Brown Act's applicability to past actions. In addition, we conclude the City's continued adherence to a long-standing

3

ordinance providing for one nonagenda public comment period over the course of its two-day regular weekly meetings constitutes an ongoing or threatened future action, not a past action. Finally, we conclude the City's postlitigation adoption of an ordinance providing for a nonagenda public comment period on each day of its two-day regular weekly meetings may moot this action if there is no reasonable expectation the City will adopt another ordinance resuming its former practice. Nonetheless, as explained below, there is a reasonable possibility the Center can amend its complaint to at least state a viable claim for declaratory relief. Consequently, we conclude the court erred in sustaining the City's demurrer without leave to amend and dismissing this action. We, therefore, reverse the judgment and remand the matter for further proceedings.

BACKGROUND

Except during scheduled recesses, the City holds regular weekly meetings on Mondays and Tuesdays. In 2001, the City adopted an ordinance providing for the publication of one consolidated agenda each week with one nonagenda public comment period docketed for Tuesday mornings. Consistent with this ordinance, at the time the Center filed this litigation, the City's regular weekly meeting agendas provided for one nonagenda public comment period on Tuesdays.

In 2014, the Center filed a combined petition for writ of mandate and complaint for declaratory and injunctive relief (complaint), alleging the City's continued failure to provide a nonagenda public comment period on Mondays violated section 54954.3, subdivision (a). The complaint sought a judicial declaration the practice was unlawful. The complaint also sought an injunction and peremptory writ of mandate directing the

4

City to provide a nonagenda public comment period during any regular meeting with a separate agenda, including its Monday meetings.

The City demurred to the Center's complaint, arguing the complaint was not ripe for adjudication because the Center did not comply with the preconditions in section 54960.2. The City also argued the complaint was moot because the City had since adopted an ordinance providing for nonagenda public comment periods on both Mondays and Tuesdays.

The court sustained the demurrer without leave to amend on the ground the Center failed to comply with the preconditions in section 54960.2 before filing its complaint. The court found the preconditions applied not just to litigation alleging past Brown Act violations, but also to litigation alleging threatened future violations. In addition, the court questioned whether the Center's complaint actually challenged a threatened future action rather than the consequences of a past action. Regardless, the court found the Center's complaint became moot after the City adopted the ordinance providing for nonagenda public comment periods on both Mondays and Tuesdays. The court subsequently entered an order dismissing the complaint.

DISCUSSION

Our review in this appeal is de novo, both because the appeal is from a judgment of dismissal after the court sustained a demurrer without leave to amend and because resolution of the appeal requires us to interpret a statute. (*Audio Visual Services Group, Inc. v. Superior Court* (2015) 233 Cal.App.4th 481, 489; *Luther v. Countrywide Financial Corp.* (2011) 195 Cal.App.4th 789, 793.) "For purposes of our review, we

5

treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. [Citations.] We also consider matters that may be judicially noticed." (*Audio Visual Services Group, Inc. v. Superior Court*, *supra*, at p. 489, fn. 5.)

I

A

Section 54960, subdivision (a), provides in relevant part: "[A]ny interested person may commence an action by mandamus, injunction, or declaratory relief … to determine the applicability of [the Brown Act] to ongoing actions or threatened future actions of the legislative body, or to determine the applicability of [the Brown Act] to past actions of the legislative body, *subject to Section 54960.2*." (Italics added.) The City contends the Legislature intended the qualifying phrase "subject to Section 54960.2" to apply both to litigation to determine the Brown Act's applicability "to ongoing actions or threatened future actions" as well as to litigation to determine the Brown Act's applicability "to past actions." Conversely, the Center contends the Legislature intended the qualifying phrase to apply only to litigation to determine the Brown Act's applicability to past actions.

The parties support their respective positions with complex arguments regarding the last antecedent rule and certain exceptions to it. "A longstanding rule of statutory construction—the 'last antecedent rule'—provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680.) The "rule 'is not an absolute and can assuredly

6

be overcome by other indicia of meaning.' " (*State ex rel. Bartlett v. Miller* (2016) 243 Cal.App.4th 1398, 1409.)  For instance, as the City points out, the qualifying phrase's separation from the antecedents by a comma is evidence the qualifying phrase applies to all antecedents.  (*White v. County of Sacramento*, *supra*, at p. 680.)  However, as the Center points out, the antecedents' separation by the disjunctive "or" is evidence the antecedents should be treated distinctly.  (See *ibid.*; *California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 584-585.)

Except to note the identified ambiguity in section 54960, subdivision (a), we need not address the intricacies of the parties' arguments on this point because they are not dispositive.  "The rules of grammar and canons of construction are but tools, 'guides to help courts determine likely legislative intent.  [Citations.]  And that intent is critical.  Those who write statutes seek to solve human problems.  Fidelity to their aims requires us to approach an interpretive problem not as if it were a purely logical game, like a Rubik's Cube, but as an effort to divine the human intent that underlies the statute.' " (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1017-1018.)

B

In reviewing questions of statutory interpretation, " ' "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' … We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent.  We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the

7

plain meaning of the language governs.' … If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' … Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute." ' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232-1233.)

In interpreting the meaning of the qualifying phrase "subject to Section 54960.2," we first consider the language of section 54960.2 itself. We do this because section 54960.2 was added to the Brown Act at the same time as the qualifying phrase (Stats. 2012, ch. 732, §§ 1-2) and because "[w]e are required to harmonize the various parts of a statutory enactment by considering the particular section in the context of the statutory framework as a whole." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 189.)

Section 54960.2, subdivision (a), states in relevant part: "[A]ny interested person may file an action to determine the applicability of this chapter *to past actions* of the legislative body pursuant to subdivision (a) of Section 54960 only if all of the following conditions are met: [¶] (1) The … interested person … first submits a cease and desist letter … to the clerk or secretary of the legislative body being accused of the violation … clearly describing *the past action* of the legislative body and nature of the alleged violation."[3] (Italics added.)

---

[3] The purpose of the cease and desist letter is to allow the legislative body an opportunity to avoid unnecessary litigation by unconditionally committing to not repeating the past action without admitting a Brown Act violation. (§ 54960.2, subd. (c).)

The italicized language, which is peppered throughout section 54960.2, unambiguously limits the applicability of section 54960.2's preconditions to litigation challenging past actions. This limitation and our obligation to harmonize the various parts of a statutory enactment effectively precludes the interpretation of the qualifying phrase the City advocates. Rather, it compels an interpretation mandating compliance with the preconditions in section 54960.2 only for litigation to determine the Brown Act's applicability to past actions of a legislative body.

C

1

The legislative history of the qualifying phrase and section 54960.2 supports this interpretation. Both the qualifying phrase and section 54960.2 were added to the Brown Act in 2012 by Senate Bill No. 1003 (SB 1003). (Stats. 2012, ch. 732, §§ 1-2.) The Legislative Counsel's Digest summarized SB 1003's import as follows: "Existing law authorizes … any interested person to file an action by mandamus, injunction, or declaratory relief to, among other things, determine the applicability of the [Brown Act] to actions or threatened future actions of the legislative body. [¶] *This bill would prohibit … an interested person from filing an action for an alleged violation of the Brown Act for past actions of a legislative body, unless certain conditions are met, including, but not limited to, a requirement that the … interested person submit a cease and desist letter to the legislative body*." (Legis. Counsel's Dig., Sen. Bill No. 1003 (2011-2012 Reg. Sess.) Summary Dig., italics added.)

9

" 'The Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature.' [Citation.]  The Legislative Counsel's summaries 'are prepared to assist the Legislature in its consideration of pending legislation.' "  (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169.)  Therefore, it reasonable to presume the Legislature enacted the legislation with the intent and meaning expressed in the Legislative Counsel's Digest.  (*Id.* at p. 1170; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 660-661.)

"Although the Legislative Counsel's summaries are not binding [citation], they are entitled to great weight."  (*Jones v. Lodge at Torrey Pines Partnership*, *supra*, 42 Cal.4th at p. 1170.)  Here, the italicized language in the Legislative Counsel's Digest fully supports a conclusion the Legislature intended the preconditions in section 54960.2 to apply only to litigation to determine the Brown Act's applicability to past actions of a legislative body.

2

SB 1003's evolution from its introduction to its passage further supports this conclusion.  When the bill was first introduced, it simply amended section 54960, subdivision (a), to supersede an unpublished appellate court opinion and extend the statute's application to past actions of a legislative body as well as to current or threatened future actions.  (Sen. Bill No. 1003 (2011-2012 Reg. Sess.) §§ 1-2, as introduced Feb. 6, 2012.)  Two months later the bill was amended to add section 54960.2 with its preconditions to litigation.  At that time, section 54960.2 did not include language limiting compliance with the preconditions to litigation involving past actions.  Instead, it

10

precluded any litigation under section 54960, subdivision (a), without compliance with the preconditions. (Sen. Amend. to Sen. Bill No. 1003 (2011-2012 Reg. Sess.) Apr. 11, 2012.) The language in section 54960.2 limiting compliance with the preconditions to past actions did not appear until a month later when the bill was amended for a second time. (Sen. Amend. to Sen. Bill No. 1003 (2011-2012 Reg. Sess.) May 3, 2012.) The limiting language remained in section 54960.2 from that point forward. (Assem. Amend. to Sen. Bill No. 1003 (2011-2012 Reg. Sess.) June 19, 2012; Assem. Amend. to Sen. Bill No. 1003 (2011-2012 Reg. Sess.) Aug. 13, 2012; Sen. Bill No. 1003 (2011-2012 Reg. Sess.) as enrolled Aug. 23, 2012.)

Importantly, the Legislature did not add the qualifying phrase to SB 1003 until after it added the language limiting section 54960.2's preconditions to litigation involving past actions. (Assem. Amend. to Sen. Bill No. 1003 (2011-2012 Reg. Sess.) June 19, 2012.) This timing dispels any notion the Legislature ever intended for the qualifying phrase to be interpreted in the manner the City advocates.

3

Other legislative history documents also support this conclusion. Specifically, the last Senate analysis of SB 1003 before its passage described the bill's import as follows: "This bill: [¶] 1. Authorizes … any interested person to file an action, as specified, to determine the applicability of the Brown Act to a past or ongoing action of a legislative body. [¶] 2. Prohibits any action to be filed by a[n] … interested person to determine the applicability of the Brown Act to *past actions* of a legislative body unless all of the following requirements are met: [¶] A. The plaintiff submits a cease and desist letter to

the legislative body, clearly describing the *past action* and the nature of the alleged violation." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1003 (2011-2012 Reg. Sess.), as amended Aug. 13, 2012, p. 2.) Indeed, the same description of the bill's import appeared in every legislative analysis prepared after the Legislature added the qualifying phrase to the bill. (See, e.g., Assem. Com. on Local Gov., Analysis of Sen. Bill No. 1003 (2011-2012 Reg. Sess.) as amended June 19, 2012, p. 1; Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 1003 (2011-2012 Reg. Sess.) as amended June 19, 2012, p. 1; Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 1003 (2011-2012 Reg. Sess.) as amended Aug. 13, 2012, p. 1.) Accordingly, the only reasonable interpretation we may give to the qualifying phrase is that it requires compliance with the preconditions in section 54960.2 before the filing of litigation to determine the Brown Act's applicability to past actions, but it does not require such compliance before the filing of litigation to determine the Brown Act's applicability to ongoing or threatened future actions.

## II

Nevertheless, the City contends the Center was required to comply with the preconditions in section 54960.2 because the Center's complaint did not challenge an ongoing or threatened future action. Rather, it challenged the City's past action of adopting an ordinance providing for only one nonagenda public comment period over the course of its two-day regular weekly meetings.

We are unpersuaded by this contention because the adoption of the ordinance did not have a one-time or determinate effect. Instead, the ordinance's effect extended to

12

every regular weekly meeting and would have continued extending to every regular weekly meeting but for the City's postlitigation enactment of another ordinance altering the City's practice. (See *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 915 [for purposes of enforcing the Brown Act under section 54960, a present or future action includes past actions that are not one-time events and are related to present or future actions].) Thus, we conclude the Center was not required to comply with the preconditions in section 54960.2 before commencing this litigation.

III

Finally, the City contends its postlitigation adoption of an ordinance providing for nonagenda public comment periods on both Mondays and Tuesdays necessarily moots this litigation. We disagree.

"An issue becomes moot when some event has occurred which 'deprive[s] the controversy of its life.' [Citation.] The policy behind a mootness dismissal is that 'courts decide justiciable controversies and will normally not render advisory opinions.' " (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 257; accord, *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.) The voluntary cessation of allegedly wrongful conduct destroys the justiciability of a controversy and renders an action moot unless there is a reasonable expectation the allegedly wrongful conduct will be repeated. (See *Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 887; *Pittenger v. Home Sav. & Loan Asso.* (1958) 166 Cal.App.2d 32, 36.)

13

At oral argument, the Center's counsel was unable to articulate facts suggesting a reasonable expectation the City would pass another ordinance resuming its former practice. Nonetheless, the City's counsel acknowledged the change in the City's practice for handling nonagenda public comment periods did not equate to a change in the City's legal position. The City stills consider its two-day regular weekly meetings to be one continuous meeting, rather than two separate meetings, for Brown Act purposes. The City also has not conceded its former practice of allowing only one nonagenda public comment period violated the Brown Act. Thus, the Center may be able to at least plead a viable claim for declaratory relief. (See *Cal. Alliance for Utils. Etc. Educ. v. City of San Diego* (1997) 56 Cal.App.4th 1024, 1029-1030 [an actual controversy existed entitling plaintiffs to declaratory relief where the parties disagreed whether the city council's actions violated the Brown Act, and the court could presume the city would continue similar practices in light of the city's refusal to concede the violation].) As there is a reasonable possibility the Center can amend its complaint to state a viable claim, we conclude the court erred in sustaining the City's demurrer to the Center's complaint without leave to amend. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; see also City of Stockton v. Superior Court (2007) 42 Cal.4th 730, 747 [as a matter of fairness, a plaintiff who has not had an opportunity to amend its complaint in response to a demurrer should be allowed leave to amend unless the complaint shows on its face it is incapable of amendment].)

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court with directions to grant the Center leave to file an amended complaint and to conduct further proceedings consistent with this decision.  The Center is awarded its costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


AARON, J.